1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,              No. 2:23-cr-00112-DC-1

12                    Plaintiff,

13            v.                             ORDER DENYING DEFENDANT'S
                                             MOTIONS TO DISMISS AND GRANTING
14    WALTER SMITH,                          DEFENDANT'S MOTION TO SEVER
                                             COUNTS
15                    Defendant.
                                             (Doc. Nos. 58, 59, 60)
16

17          This matter came before the court on February 21, 2025 for a hearing on Defendant's

18   motion to dismiss Count One based on entrapment as a matter of law, motion to dismiss Count

19   One because no crime occurred, and motion to sever Counts One and Two. (Doc. Nos. 58, 59,

20   60.) Attorney Timothy Zindel appeared on behalf of Defendant. Assistant United States Attorney

21   Roger Yang appeared on behalf of the Government. For the reasons explained below,

22   Defendant's motion to dismiss Count One based on entrapment as a matter of law and motion to

23   dismiss Count One because no crime occurred will be denied. Defendant's motion to sever

24   Counts One and Two will be granted.

25                                    **BACKGROUND**

26          On April 14, 2023, the Government filed a criminal complaint against Defendant Walter

27   Smith alleging a violation of 18 U.S.C. § 2422(b) – attempted coercion and enticement. (Doc. No.

28   1.) That complaint was based on the following facts described in the affidavit of FBI Special

                                            1

1  Agent Rachel Johnston. (*Id.* at 3–9.)

2      On April 1, 2023, Defendant used Kik, a cell phone messaging application, to initiate a

3  conversation with another Kik user, who was an undercover FBI agent posing as a nanny to an 8-

4  year-old girl. (*Id.* at 3.) Between April 1 and April 13, 2023, Defendant and the undercover agent

5  exchanged hundreds of messages regarding Defendant's sexual interest in children and having

6  sexual relations with the minor that the undercover agent purportedly nannied and the undercover

7  agent herself. (*Id.*) On April 6, 2023, Defendant sent a few nude photos of himself and his erect

8  penis to the undercover agent and asked the undercover agent if she showed the photos to the

9  minor. (*Id.* at 3–4.) After conversing for nearly two weeks, Defendant and the undercover agent

10  made plans to meet at a Starbucks in Chico, California with the minor on April 13, 2023. (*Id.* at

11  7.) That day, FBI agents intercepted Defendant when he arrived at the Starbucks and arrested

12  him. (*Id.* at 8–9.)

13      On April 27, 2023, the grand jury returned an indictment on two counts: (1) attempted

14  coercion of a minor in violation of 18 U.S.C. § 2422(b); and (2) receipt of child pornography in

15  violation of 18 U.S.C. § 2252(a)(2). (Doc. No. 11.) The indictment itself does not include any of

16  facts described in the FBI agent's affidavit attached to the complaint. Count One charges that

17  from April 1, 2023 through April 13, 2023, in Nevada County and Butte County, Defendant

18  used a means and facility of interstate and foreign commerce to
19  knowingly attempt to persuade, induce, entice and coerce [a minor]
   to engage in sexual activity for which any person can be charged with
20  a criminal offense, to wit: violations of California Penal Code section
   288, a lewd or lascivious act, upon the body, or any part or member
21  thereof, of a child who is under the age of 14 years, with the intent
   of arousing, appealing to, or gratifying the lust, passions, or sexual
22  desires of that person or the child; and California Penal Code section
   287(c)(1), oral copulation with a minor, all in violation of [18 U.S.C.
23  § 2422(b)].

24  (*Id.* at 1–2.) In Count Two, Defendant is charged with receiving child pornography approximately

25  two years earlier, specifically that on May 15, 2021, in Nevada County, Defendant

26  did knowingly receive one or more visual depiction[s], using a means
   and facility of interstate commerce and which was mailed, shipped,
27  and transported in and affecting interstate commerce, by any means
   including by computer, where the production of such visual depiction
28  involved the use of a minor engaging in sexually explicit conduct . .

. to wit: one or more visual depictions of Child Victim 1, all in violation of [18 U.S.C. § 2252(a)(2)].

(*Id.* at 2.) Though not contained in the indictment, the Government explains in its opposition to Defendant's pending motion to sever counts that Defendant participated in incest-themed chat rooms on Kik and exchanged messages with another Kik user, Brent Hooton, who was later charged and convicted of producing and distributing Child Sexual Abuse Material ("CSAM"). (Doc. No. 64 at 5–6.) Based on a search of Hooton's cell phone, the Government alleges that on May 15, 2021, Hooton sent Defendant a photograph of Child Victim 1, an 8-year-old girl, nude from the waist down with her legs spread open. (*Id.* at 5.)

On December 20, 2024, Defendant filed a motion to dismiss Count One on the ground that the Government entrapped Defendant as a matter of law in violation of the Fifth Amendment to the United States Constitution. (Doc. No. 58.) That same day, Defendant filed a motion to sever Counts One and Two on the grounds that joinder is not proper under Rule 8 of the Federal Rules of Criminal Procedure and joinder is prejudicial under Rule 14. (Doc. No. 59). On December 23, 2024, Defendant filed a second motion to dismiss Count One on the ground that the undisputed evidence shows no crime occurred. (Doc. No. 60). The Government filed oppositions to all three motions on January 17, 2025. (Doc. Nos. 63, 64, 65). Defendant filed replies on February 7, 2025. (Doc. No. 69, 70, 71). The court will address each motion in turn.

## ANALYSIS

**A.    Motion to Dismiss Because Defendant was Entrapped as a Matter of Law**

1.    Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). To demonstrate entrapment as a matter of law, a "defendant must point to undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by trickery, persuasion, or fraud of a government agent." *United States v. Williams*, 547 F.3d 1187, 1197 (9th Cir. 2008) (quoting *United States v. Smith,* 802 F.2d 1119, 1124 (9th Cir. 1986)). The inquiry into whether "the Government's deception actually implants

the criminal design in the mind of the defendant" is a subjective one. *Williams*, 547 F.3d at 1197

(quoting *United States v. Russell*, 411 U.S. 423, 436 (1973)).

The defense of entrapment has two elements: "(1) government inducement of the crime,

and (2) the absence of predisposition on the part of the defendant." *United States v. Davis*, 36

F.3d 1424, 1430 (9th Cir. 1994) (citation omitted). "Inducement can be any government conduct

creating a substantial risk that an otherwise law-abiding citizen would commit an offense,

including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of

reward, or pleas based on need, sympathy or friendship." *Id.* As for predisposition, the Ninth

Circuit directs district courts to consider the following five factors to determine if a defendant was

predisposed to commit the offense:

> (1) the character or reputation of the defendant, including any prior
> criminal record; (2) whether the government initially made the
> suggestion of criminal activity; (3) whether the defendant engaged in
> the criminal activity for profit; (4) whether the defendant evidenced
> reluctance to commit the offense that was overcome by repeated
> government inducement or persuasion; and (5) the nature of the
> inducement or persuasion supplied by the government.

*Smith,* 802 F.2d at 1124–25. Of these, a defendant's reluctance to commit the offense is "most

important" to the entrapment analysis. *Id.* at 1125. In assessing a claim of entrapment as a matter

of law, the court must view the evidence "in the light most favorable to the government." *United

States v. Poehlman*, 217 F.3d 692, 698 (9th Cir. 2000). Further, the defendant must show that "no

reasonable jury could [find] in favor of the government as to inducement or lack of

predisposition." *Id.* Though the inquiries into whether Defendant was induced to commit the

crime and predisposed to commit the crime involve two separate analyses, they are closely

related. *Id.* "If a defendant is predisposed to commit the offense, he will require little or no

inducement to do so; conversely, if the government must work hard to induce a defendant to

commit the offense, it is far less likely that he was predisposed." *Id.*

    2.    Analysis

Defendant seeks to dismiss Count One of the indictment, as he asserts he was entrapped as

a matter of law in violation of his Fifth Amendment due process rights. (Doc. No. 58.)

Specifically, Defendant argues he did not "knowingly attempt to persuade, induce, entice and

coerce [a minor] to engage in sexual activity" as charged in the indictment, because his primary interest was in sexual activity with the undercover agent (an adult woman), and the undercover agent—not Defendant—steered their conversation towards sexual activity with the child. (Doc. No. 58 at 15.) In its opposition, the Government argues Defendant was not induced by law enforcement to attempt to entice a minor to engage in sexual activity because he was not reluctant to commit that crime, and the undercover agent did not have to exert pressure on him to do so. (Doc. No. 63 at 5.) The court will address the parties' arguments as to each of the predisposition factors laid out by the Ninth Circuit in *Smith* and their arguments as to inducement.

As to the first factor of Defendant's criminal history, Defendant and the Government agree that Defendant has no prior criminal record. (Doc. Nos. 58 at 15; 63 at 31, n.1.) However, the Government argues that Defendant's chats with other people establish Defendant's character and reputation for a sexual interest in children. (Doc. No. 63 at 31, n.1.) Defendant counters that evidence of predisposition is limited only to what the Government knew at the time they engaged with Defendant. (Doc. No. 58 at 15.) As discussed below with regard to the other factors, the court finds consideration of the undisputed evidence as to Count One—that is, the transcript of Kik messages between Defendant and the undercover from April 1 through April 13, 2023—to be sufficient to support the court's determination that Defendant has not shown that no reasonable jury could find in favor of the government as to predisposition. *See Poehlman*, 217 F.3d at 698. For this reason, the court need not consider the additional evidence proffered by the Government nor address Defendant's objections to that evidence.

As to the third factor of whether Defendant engaged in the conduct for profit, there is no dispute that the charged conduct was not undertaken for profit. (Doc. Nos. 63 at 31 n.1; 58 at 16.) As such, this factor is not particularly relevant in this case.

The second, fourth, and fifth factors—whether the government initially suggested the criminal activity, whether the defendant evidenced reluctance to commit the offense that was overcome by repeated government inducement, and the nature of that inducement—are closely related and are addressed together. The undisputed evidence of the transcript of Kik Messages shows Defendant initiated the conversation with the undercover agent when he messaged her in

an incest-themed group chat and asked what she was looking for. (Doc. No. 63 at 20.) When the undercover agent inquired as to what Defendant was looking for, he stated that "[he] would be interested" in sexual contact with both the undercover and the minor child. *Id.* After the undercover agent clarified that she was not interested in sexual relations with Defendant, and asked Defendant "what do you want to do to her" (meaning the minor child), Defendant responded "[d]epends she's too young for penetration / Play with it suck it." (*Id.*) These chats on April 5, 2023 reflect Defendant—not the undercover agent—suggesting the specific sex acts that Defendant wanted to engage in with the minor child. Further evidencing Defendant's lack of reluctance to pursue engaging in sexual activity with the minor child are the chats from April 12, 2023. On that day, Defendant told the agent he had condoms ahead of his meeting with the undercover agent and minor child at Starbucks, asked if the child wanted to have sex, suggested they should all watch a specific pornographic video together, asked if the minor child had "said anything about sucking," and stated "I can envision her lips wrapped around me." (*Id.* at 21.) Defendant also suggested that the agent should direct the child to practice oral copulation on a banana and gave detailed instructions—e.g., "She needs to wrap her lips over her teeth take it in as far as she can and not mark it / Suck on it / Lick it"—and asked the agent to send him a photo of the child with a banana in her mouth. (*Id.*) Though the agent did ask for tips on how to groom the child and expressed her own interest in sexual relations with the child, at no point in the conversation did the agent exert pressure on Defendant for him to engage in sexual acts with the child. Indeed, the agent throughout the conversation repeatedly told Defendant she was interested in women only and had no interest in sexual activity with Defendant. (*Id.* at 6, 8, 15.) Despite Defendant's argument to the contrary, this evidence demonstrates that a reasonable jury could find in favor of the government as to predisposition. *See Poehlman*, 217 F.3d at 698.

The court is also not persuaded by Defendant's contention that his hesitancy to meet with the agent and child in person is evidence that he was induced to commit the crime. (*See* Doc. No. 58 at 16.) Notably, when Defendant messaged the agent on April 12 that he was "chickening out," had "[t]oo much at stake," and expressed that if the agent was the minor's mother instead of just her nanny that he would be "all in," the agent responded by asking Defendant to let her know if

he changed his mind. (Doc. No. 63 at 27.) Defendant further stated that they "just need more time," and that he "worr[ies] about angry parents." (*Id.* at 28.) After expressing some worry about the potential consequences of meeting with the agent and child, Defendant returned the conversation back to the child, stating they should still meet, and reasserting his sexual interest in both the agent and child. (*Id.* at 28–29.) Defendant then ultimately showed up at the agreed-upon meeting place—a Starbucks in Chico, California—on April 13, 2023. (*Id.* at 30.) Contrary to Defendant's contention, this evidence does not show his reluctance or that his reluctance was overcome by repeated government inducement. At most, Defendant overcame his own hesitancies, which were based on his fear of repercussions and in his own words, "angry parents." (*See id.* at 28.)

In addition, throughout the conversation with the agent, Defendant repeatedly expressed his sexual interest in the minor child, and he did not express reluctance to engage in sexual activity with minors. (*Id.*) Notably, Defendant's messages with the agent reflect his experience with "taboo" and "tab" chat groups, including in the "NorCal Fam" incest-themed chat room where he first messaged the agent, and other incest-themed pornographic video websites. (*See* Doc. No. 63 at 5, 12–14.) Specifically, Defendant told the agent that she could find people interested in sexual conduct with children in "taboo groups" and searching "tab" or "taboo." (*Id.* at 34.) Defendant also gave the agent instructions on how to groom the minor, including that she should "show her some videos," "[a]sk her what she would want to do," "[t]ry motherless.com/ There are some incest older younger stuff there," and asking if the minor had watched porn before. (*Id.* at 12, 25.)  Further, when the agent asked if Defendant had ever been active with anyone, Defendant responded that he was sexually active with a "[w]oman and her daughters from [Craigslist]." (*Id.* at 5–6, 32.) Defendant also stated he "[s]houldn't say" when the agent asked him the age of the youngest person he had been with sexually. (*Id.* at 32.) Accordingly, a reasonable trier of fact could conclude that Defendant was not entrapped. *United States v. Strater*, 150 F. App'x 610, 612 (9th Cir. 2005)[1] (finding the government met its burden of proving the

---

[1] Citation to the unpublished Ninth Circuit opinions such as those cited here and elsewhere in this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    defendant was predisposed to commit the crime where defendant demonstrated no reluctance to

2    meet the proposed victim even after discovering she was a minor); *United States v. Cruz*, No.

3    2:12-cr-00239-KJM, 2013 WL 3833033, at *7 (E.D. Cal. July 23, 2013) (finding that a

4    reasonable trier of fact could conclude that the defendant was not entrapped where he continued

5    to pursue a minor even after he learned she was 13 years old).

6         In sum, having considered the predisposition factors and viewing the evidence "in the

7    light most favorable to the government," the court finds Defendant has not borne his burden to

8    show that "no reasonable jury could [find] in favor of the government as to . . . lack of

9    predisposition." *Poehlman*, 217 F.3d at 698–99.

10         The court now turns to the related inquiry of inducement. "An improper 'inducement' . . .

11   goes beyond providing an ordinary 'opportunity to commit a crime.' An 'inducement' consists of

12   an 'opportunity' *plus* something else . . . ." *United States v. Gendron*, 18 F.3d 955, 961 (1st Cir.

13   1994) (quoting *Jacobson v. United States,* 503 U.S. 540, 550 (1992)). As to inducement,

14   Defendant argues in his motion that the agent induced him to travel to meet the agent and child

15   "while urging him to consider the possibility of a sexual encounter involving the agent and child

16   under her care." (Doc. No. 58 at 15.) Defendant argues that while he "answered her questions and

17   made lewd comments," he expressed no interest in having any sexual relations with the minor

18   until after the undercover "effectively dared" him to. *Id.* In support of his argument, Defendant

19   relies on the Ninth Circuit's decision in *Poehlman*, in which the defendant's conviction was

20   overturned on the ground that a government agent had induced the defendant into crossing state

21   lines for the purpose of engaging in sex acts with a minor. (Doc. No. 69 at 2–5) (citing *Poehlman*,

22   217 F.3d at 692). In *Poehlman*, the undercover agent posed as a mother to three minor daughters,

23   and "[o]ver six months and scores of e-mails," she aggressively pushed the defendant to articulate

24   his sexual fantasies regarding her daughters. *Id.* at 700. The undercover agent "did not merely

25   invite [defendant] to have a sexual relationship with her minor daughters, she made it a condition

26   of her own continued interest in him." *Id.* at 699–700. The Ninth Circuit noted there that the

27   government took advantage of defendant's particular longing for an adult relationship with the

28   undercover agent and for a fatherly relationship with the daughters. *Id.* at 702.

Defendant's reliance on *Poehlman* is unavailing, however, because the facts in this case are distinguishable from the facts presented in *Poehlman*. Here, unlike in *Poehlman*, the undercover agent did not use excessive pressure or prey upon Defendant's particular weaknesses. *See id.* at 702. Further, in contrast to *Poehlman*, the undercover agent here repeatedly made clear that she was not interested in a sexual relationship with Defendant, which the undercover agent reiterated before Defendant arrived to meet with the undercover agent and child. (Doc. No. 63 at 17.) Defendant also made clear that he was married and had other sexual partners, unlike in *Poehlman*, where the government "played on [defendant's] obvious need for an adult relationship, for acceptance of his sexual proclivities and for family . . . ." *See Poehlman*, 217 F.3d at 702. Moreover, the undercover agent in this case posed as a nanny to the child, unlike the agent in *Poehlman* who posed as a mother to minor daughters. *Id.* This is a significant difference on the question of inducement because parental consent can affect the "self-struggle to resist ordinary temptations," especially when a parent frames the illicit sexual activity as one of "parental responsibility." *Id.* Indeed, in its decision in *Poehlman*, the Ninth Circuit opined that this context of parental consent is particularly suggestive because it decreases the defendant's risk of detection and "allay[s] fears defendant might have that the activities would be harmful, distasteful, or inappropriate . . . ." *Id.* Thus, Defendant's reliance on the decision in *Poehlman* does not support a finding that he was induced to commit the charged offense.

In addition, as discussed above, Defendant was initially reluctant to meet with the agent and child. (Doc. No. 63 at 16.) But that reluctance was based on fear of the consequences and stemmed from his concern over the illegality of the activity, rather than from viewing "the command of the law as indicative of what is right and wrong." *See United States v. Hinkel*, 837 F.3d 111, 119 (1st Cir. 2016) (finding the evidence supported a finding that defendant was not induced to engage in criminal conduct despite showing some concern over the illegality of engaging in sexual conduct with a minor child). Further, and most importantly, Defendant's reluctance did not need to be "overcome by repeated government inducement or persuasion." *United States v. Mohamud*, 843 F.3d 420, 434 (9th Cir. 2016) (quoting *Williams*, 547 F.3d at 1198). Rather, Defendant overcame his own reluctance. Specifically, after expressing his

hesitancy and worry about "angry parents," Defendant asked the agent if she planned to take the child out of school "early tomorrow," referring to the day they had planned to meet, and he told the agent they "should at least meet," and that "[m]aybe it'll work out I get hard thinking about it." (Doc. No. 63 at 15–16.). At no point in the conversation did the agent exert pressure on Defendant in an attempt to change his mind. When Defendant told the agent at 10:00 a.m. on April 12 that he was "chickening out," the agent expressed some disappointment, but responded that Defendant should let her know if he changes his mind, and indeed just a few hours later around 11:46 a.m., Defendant confirmed they should meet and he wants to meet the next day (April 13) as initially planned. (*Id.* at 15–17.) Later that afternoon, around 1:53 p.m., Defendant told the agent to "get [the child] primed to play," and "do the banana thing" that day to prepare her for the oral copulation with Defendant the next day. (*Id.* at 16–17.) Thus, the evidence show the agent did not go beyond "merely provid[ing] an opportunity to commit the crime." *See Poehlman*, 217 F.3d at 707 n.1. In light of this undisputed evidence, a "reasonable jury could [find] in favor of the government as to inducement." *See id.* at 698.

For these reasons, Defendant has not shown that no reasonable jury could find in favor of the Government on the question of entrapment. Accordingly, Defendant's motion to dismiss Count One of the indictment on the ground that he was entrapped as a matter of law will be denied.

**B.      Motion to Dismiss Because No Crime Occurred**

Defendant argues in his motion to dismiss Count One of the indictment on the ground that the undisputed evidence cannot, as a matter of law, prove beyond a reasonable doubt the Defendant violated 18 U.S.C. § 2422(b) by attempting to entice *a minor*. (Doc. No. 60 at 1) (emphasis added). Defendant rests his motion on Federal Rule of Criminal Procedure 12(b)(1), which states a party may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." (*Id.*)

The thrust of Defendant's argument is that notwithstanding the Ninth Circuit's clear holding in *United States v. Macapagal*, 56 F.4th 742, 744 (9th Cir. 2022) that a person may violate 18 U.S.C. § 2422(b) by communicating exclusively with an adult intermediary about a prospective

1    sexual encounter with a minor, this court is nonetheless not bound by that precedent because the

2    Ninth Circuit has not "considered the arguments and authorities discussed in [Defendant's]

3    motion." (*Id.* at 2.) Defendant also argues that 18 U.S.C. § 2422(b) has been incorrectly

4    interpretated by the Ninth Circuit, which ignored the requirement in § 2422(b) that the defendant

5    communicate directly with a minor, rather than with an intermediary. (*Id.* at 12.) The Government

6    counters that Ninth Circuit precedent expressly approves of the use of undercover agents to

7    enforce § 2422(b)—both when the agent poses as a child and when the agent poses as an

8    intermediary with access to a child, such as a nanny or parent. (Doc. No. 65 at 5–7.) The

9    Government further argues that this court is bound by the Ninth Circuit's precedential decisions

10   interpreting 18 U.S.C. § 2422(b), which hold that § 2422(b) covers the conduct alleged in this

11   case—namely, Defendant's communications with an adult intermediary for the purpose of enticing

12   a minor to engage in sexual activity with Defendant. (*Id.*)

13           Contrary to Defendant's arguments, the court is undoubtedly bound by Ninth Circuit

14   precedent. *See Biggs v. Sec'y of the Cal. Dep't of Corr. & Rehab.*, 717 F.3d 678, 689 (9th Cir.

15   2013) (explaining that courts are bound by circuit precedent under the "law-of-the-circuit rule"

16   unless it is "clearly irreconcilable" with intervening Supreme Court precedent); *see also Day v.

17   Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007) (explaining similarly). Relevant here, the court is

18   bound by the Ninth Circuit's decisions in *Macapagal* and *United States v. Eller*, 57 F.4th 1117

19   (9th Cir. 2023). In *Macapagal*, the indictment of the defendant arose from a sting operation where

20   an undercover federal agent posed as a mother to three minor daughters. 56 F.4th at 744. Through

21   text messages, the defendant and the undercover agent made plans for defendant to teach the minor

22   daughters about sex by having defendant engage in sexual acts with them. *Id.* The defendant sent

23   the agent a nude photo of his torso that he asked to be shared with the daughters, and they arranged

24   to meet so defendant could provide gift bags with presents for the daughters. *Id.* at 744–745. The

25   defendant was convicted under 18 U.S.C. § 2422(b) for attempted enticement of a minor, and he

26   appealed his conviction on the ground that § 2422(b) requires direct communication with the

27   supposed minor rather than with an adult intermediary. *Id.* at 744. In its decision, the Ninth Circuit

28   joined "all other circuits that have considered similar challenges, and have concluded that the

1   requisite intent to entice a minor is not defeated by use of an adult intermediary." *Id.* In other

2   words, "a defendant can violate § 2422(b) by communicating with an adult intermediary rather

3   than a child or someone believed to be a child." *Id.* at 746 (quoting *United States v. Laureys*, 653

4   F.3d 27, 33 (D.C. Cir. 2011)). The Ninth Circuit noted that the "efficacy of § 2422(b) would be

5   eviscerated if a potential defendant could avoid prosecution by employing an adult as an

6   intermediary." *Macapagal*, 56 F.4th at 745 (citation omitted).

7        Notably, the circumstances of the present case are remarkably similar to the charged

8   conduct in *Macapagal*. The "undisputed evidence" that Defendant refers to in this case consists of

9   the Kik Messenger transcript showing his communications with the undercover FBI agent over a

10  period of thirteen days in April 2023. (Doc. No. 60 at 4.) Defendant allegedly messaged via Kik

11  messenger an undercover FBI agent posing as a nanny to an 8-year-old girl in an incest-themed

12  group chat. (Doc. No. 1 at 3.) Defendant and the undercover agent had explicit conversations

13  spanning nearly two weeks where they discussed, among other things, Defendant's desire to

14  engage in sexual activity with the minor child and sexual activity with the undercover agent in the

15  minor child's presence. (*Id.*) Defendant instructed the undercover agent on how to groom the

16  minor child for sexual activity, including how to perform oral copulation. (*Id.*) Defendant shared

17  nude photographs of himself and his erect penis and asked the undercover agent if she had shown

18  the photographs to the minor child. (*Id.*at 3–4.) Defendant also made plans to meet the undercover

19  agent and the minor child at a Starbucks in Chico, California, and he went to that location as

20  planned. (*Id.* at 8.) The factual similarities between this case and *Macapagal* further supports the

21  conclusion that the specific conduct charged here is exactly what the Ninth Circuit has held to be

22  conduct covered by § 2422(b). *See Eller*, 57 F.4th at 1121 (holding that § 2422(b) applies even if

23  the minor is fictional and the attempted coercion occurs through an intermediary or undercover

24  officer). In light of Ninth Circuit precedent, the "undisputed evidence" relied upon by Defendant

25  in his motion to dismiss demonstrates that his conduct falls squarely within § 2422(b).

26       Further, the court is unconvinced by Defendant's argument that the Ninth Circuit's

27  precedential decisions in *Macapagal* and *Eller* are clearly irreconcilable with certain decisions

28  from the United States Supreme Court which narrowed the scope of aggravated identity theft in

1   violation of 18 U.S.C. § 1028A and of unauthorized access to a computer in violation of 18

2   U.S.C. § 1030(a)(2). (Doc. No. 60 at 13–14) (citing *Dubin v. United States*, 599 U.S. 110, 113–17

3   (2023); *Van Buren v. United States*, 593 U.S. 374, 393–94 (2021)). Notably, those decisions, as

4   well as the other decisions Defendant cites to, did not interpret § 2422(b) or interpret a statute

5   containing similar language to § 2422(b). (*See* Doc. No. 60 at 13–17.) Therefore, the binding

6   Ninth Circuit precedent in *Macapagal* and *Eller* is not "clearly irreconcilable" with the Supreme

7   Court's holdings in those cases. *See Biggs*, 717 F.3d at 689.

8        For these reasons, the court will deny Defendant's motion to dismiss Count One on the

9   ground that the undisputed evidence shows no crime occurred.

10  **C.**     **Motion to Sever Counts**

11       1.    <u>Legal Standard</u>

12       Federal Rule of Criminal Procedure 8(a) governs joinder of offenses charged in the same

13  indictment or information. Fed. R. Crim. P. 8(a). Though "Rule 8 has been 'broadly construed in

14  favor of initial joinder,'" the initial joinder decision still "warrants scrutiny." *United States v.*

15  *Jawara*, 474 F.3d 565, 573 (9th Cir. 2007) (citation omitted). If the offenses charged are "of the

16  same or similar character, or are based on the same act or transaction, or are connected with or

17  constitute parts of a common scheme or plan," then joinder may be proper. Fed. R. Crim. P. 8(a).

18  The Ninth Circuit directs district courts to use a holistic, multi-factor approach, which requires

19  more than a "general thematic commonality" between offenses. *Jawara*, 474 F.3d at 578. This

20  approach includes considering several factors when evaluating whether offenses are of the same

21  "same or similar character," including: "the elements of the statutory offenses, the temporal

22  proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the

23  acts, the modus operandi of the crimes, and the identity of the victims." *Id.* at 577–78. The weight

24  given to each factor depends on the circumstances of the case. *Id.*

25       Further, the district court should determine whether the offenses are of the "same or

26  similar character" solely from the "face of the indictment." *Id.*; *see also United States v. Terry*,

27  911 F.2d 272, 276 (9th Cir. 1990).

28       Even when joinder is proper under Rule 8(a), a district court may "order separate trials of

counts" if it determines that "joinder of offenses . . . appears to prejudice a defendant or the government," pursuant to Rule 14(a). Fed. R. Crim. P. 14(a). However, "Rule 14 should not be viewed as a backstop or substitute for the initial analysis required under Rule 8(a)." *Jawara*, 474 F.3d at 573.

2.    Analysis

Defendant seeks to sever Count One, attempted enticement of a minor in violation of 18 U.S.C § 2422(b), from Count Two, receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). (Doc. No. 59 at 1.) Defendant argues the Government improperly joined Counts One and Two because the offenses are not of the same or similar character or based on the same transaction, and the offenses are not part of a common scheme or plan. (*Id.* at 5–6.) The Government defends its joinder of Counts One and Two in the indictment by arguing that these two offenses are of the "same or similar character" and thus joinder satisfies Rule 8(a). (Doc. No. 64 at 6.) The court will address the parties' arguments as to each of the factors laid out by the Ninth Circuit in *Jawara*.

As to the first factor, the Government argues the elements of the two offenses are similar because for both offenses, the jury will need to be instructed on the meaning of "minors" and the unlawfulness of sexual conduct with minors under California law," and the Government will have to provide Defendant's knowledge of the age of the minor. (Doc. No. 64 at 8.) The Government is correct that there is some overlap between the elements of the offenses. Attempted coercion of a minor under 18 U.S.C. § 2422(b) makes unlawful an attempt to "persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense" by "using the mail or any facility or means of interstate or foreign commerce . . . ." Receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) similarly involves an interstate or foreign commerce element and that the image must depict a minor engaging in sexually explicit conduct. Attempted coercion of a minor does, however, involve direct or indirect contact with a minor, whereas receipt of child pornography does not. *See United States v. Rosenthal*, No. 19-cr-00217-RS, 2022 WL 1028703, at *4 (N.D. Cal. Apr. 6, 2022). Still, consideration of this factor provides support for joinder of

14

1    both counts in the indictment.

2         As to the second factor of temporal proximity, the conduct alleged in Count One occurred

3    approximately two years after the conduct alleged in Count Two. The two-year lapse in time

4    between the alleged crimes weighs against joinder. *See Jawara*, 474 F.3d at 578–79 (finding a

5    temporal distance of three-and-a-half years between underlying acts alleged in indictment to be

6    significant, especially where the counts did not stem from common events); *United States v. Hill*,

7    No. 13-cr-00765-SI, 2014 WL 3767075, at *2 (N.D. Cal. July 24, 2014) (finding joinder improper

8    in part because the two counts were separated by a gap of more than five months); *United States

9    v. Rosenthal*, No. 19-cr-00217-RS, 2022 WL 1028703, at *4 (N.D. Cal. Apr. 6, 2022) (denying

10   joinder even though the alleged conduct as to all three counts occurred within the same month).

11        As to the third factor of the extent of evidentiary overlap, the Government argues joinder

12   is proper because there is significant overlap in the evidence to prove each of the counts. (Doc.

13   No. 64 at 8–10.) Specifically, the Government emphasizes both incidents involve the Defendant's

14   general sexual interest in children, 8-year-old minor victims, the use of the same Kik messenger

15   account, and involvement in incest-themed chat rooms. (*Id.* at 9.) In its opposition to Defendant's

16   motion to sever, the Government describes in great detail how the evidence they would present in

17   each of these cases would be cross-admissible. (*Id.* at 9–10.) Critically though, none of these

18   factual details are included in the indictment. Indeed, the only factual information included in the

19   indictment is: (1) the dates of the alleged crimes, (2) the county in which the alleged crimes

20   occurred, and (3) the alleged use of an Apple iPhone 12 Pro in the commission of the crimes.

21   (Doc. No. 11.) These bare facts in the indictment are insufficient on their own to substantiate the

22   Government's assertion that there would be significant evidentiary overlap at trial. *See Rosenthal*,

23   2022 WL 1028703, at *4. For this reason, consideration of this factor weighs against joinder of

24   Counts One and Two.

25        Further, due to the "barebones" nature of the indictment, the remaining *Jawara* factors—

26   the physical location of the acts, modus operandi of the crimes, and the identity of the

27   victims—also do not support joinder. *See Jawara*, 474 F.3d at 578. The Ninth Circuit has made

28   clear that the government "crafts a barebones indictment at its own risk" when it "seeks joinder of

15

counts on the basis of same or similar character . . . ." *Id.* (internal quotation marks omitted). Here, the indictment does not provide a basis to find that Count One is of the same or similar character as Count Two. Therefore, the court concludes that joinder of Count One and Count Two was improper under Rule 8(a). *See Terry*, 911 F.2d at 276 ("Because Rule 8 is concerned with the propriety of joining offenses in the indictment, the validity of joinder is determined solely by the allegations in the indictment.").[2]

For these reasons, Defendant's motion to sever Count One and Count Two will be granted.

## CONCLUSION

For the reasons explained above:

1.    Defendant's motion to dismiss Count One based on entrapment (Doc. No. 58) is DENIED;

2.    Defendant's motion to dismiss Count One based on no crime occurring (Doc. No. 60) is DENIED; and

3.    Defendant's motion to sever Count One and Count Two (Doc. No. 59) is GRANTED.

IT IS SO ORDERED.

Dated:    **March 11, 2025**

Dena Coggins
United States District Judge

---

[2]  Because the court finds that joinder was improper under Rule 8(a), the court need not address the parties' arguments regarding whether joinder prejudices the Defendant at trial under Rule 14(a).